RUNDLE v. CAPITOL CHEVROLET, INC.—129 S. W. (2d) 217.

Middle Section.   March 25, 1939.

Petition for Certiorari denied by Supreme Court, June 10, 1939.

152

Gordon B. Walker and J. P. Stallworth, Jr., both of Nashville, for appellant.

Jacobs H. Doyle, of Nashville, for appellee.

FELTS, J.  S. B. Rundle bought a second-hand automobile from the Capitol Chevrolet, Inc.  The price was $150.  He paid $50 cash and promised to pay the balance, plus a carrying charge of $29.60, in 12 monthly installments of $10.80 each.  The sale was upon condition that title should not pass until the car was paid for, and was evidenced by a written contract to this effect.

Before the first installment came due Rundle learned that the Capitol Chevrolet, Inc., did not have title to two of the tires which it had sold him on the car.  The Apex Oil Corporation had previously sold these tires under a conditional sale, and it still held the title to them and had a debt of $28.50 against them.  It called on Rundle to pay this debt or surrender the tires.  He notified the Capitol Chevrolet, Inc., and asked it to adjust the matter, which it declined to do.  The Apex Oil Corporation came to replevy the tires, and he surrendered them.  He thereupon asked the Capitol Chevrolet, Inc.,

to take back the car and refund the $50 he had paid it, which it also declined to do.

About a week later the first installment matured, and the General Motors Acceptance Corporation, to whom the Capitol Chevrolet, Inc., had transferred the conditional sale contract, repossessed the car, stored it in the garage of the Capitol Chevrolet, Inc., advertised and sold it for $100 to the Capitol Chevrolet, Inc. This company paid the deficit of $29.60 to the General Motors Acceptance Corporation and took an assignment of the conditional sale contract.

Three days later Rundle brought this suit in the court of general sessions to recover what he had paid on the car. Defendant Capitol Chevrolet, Inc., denied his right to recover and by cross-action sought to recover of him the deficit of $29.60, plus interest and attorney's fees, under the conditional sale contract. That court allowed him a recovery of $28.50 and defendant a recovery of $29.60, and the offset the latter against the former.

He brought the case to the circuit court by certiorari. That court, trying the case without a jury, held that he was entitled to recover $11, the amount the court found it would have cost to replace the tires; and that defendant was entitled to recover of him $39.60, the deficit of $29.60 and $10 attorney's fees; and the court, off-setting the $11 against $39.60, rendered judgment in favor of defendant against him for $28.60, taxing each party with one-half the costs.

Plaintiff appealed in error to this court and has assigned errors insisting that, upon the facts shown, defendant's breach of warranty of title entitled him to rescind the sale and recover the $50 he paid on the car; and that the circuit court should have so held and allowed him a judgment for this amount against defendant and should not have allowed it any recovery against him.

Defendant has moved to dismiss the appeal in error because it was not perfected in time. Plaintiff was allowed 30 days from June 4, 1938, in which to perfect his appeal in error either by giving bond or taking the oath. At the same term and on July 2 the court granted him "fifteen (15) days additional time within which to file his bill of exceptions and otherwise perfect his said appeal." He filed the oath on July 5, which was within the additional time allowed; and the court had power to grant such additional time. Physicians Mut. Health & Acc. Ins. Co. v. Grigsby, 165 Tenn., 151, 53 S. W. (2d), 381; Strain v. Roddy, 171 Tenn., 181, 101 S. W. (2d), 475. This additional time was allowed not only "to file his bill of exceptions," but also to "otherwise perfect his said appeal," which he did by taking the oath, as allowed by the orders of June 4 and July 2. Defendant's motion is denied.

Defendant insists that it made no warranty of title to the car but that plaintiff purchased from it at his peril. We cannot assent to this. Under the circumstances here appearing, the law raised

a warranty of title by defendant. Note, 16 Ann. Cas., 59; 2 Mechem on Sales, sections 1300-1302; Benjamin on Sales (6th Am. Ed.), section 639; 1 Williston on Sales (2 Ed.), sections 216-218.

Mechem says (vol. 2, section 1300): "It is also everywhere agreed that, in a sale of a specific and ascertained chattel, any affirmation by the seller that the chattel is his is equivalent to an express warranty of title; and that this affirmation may be implied from his conduct as well as from his words, and may also result from the nature and circumstances of the sale."

Benjamin says (sec. 639): "A sale of personal chattels implies an affirmation by the vendor that the chattel is his, and therefore he warrants the title, unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold."

Summing up his discussion of the rule in United States, Mechem states (vol. 2, section 1302): "It seems universally to be conceded here that where the seller is in possession of the goods a warranty of title accompanies the sale, upon the ground that his undertaking to sell under such circumstances is of itself an affirmation of his title" (citing many authorities).

In Trigg v. Faris, 24 Tenn. (5 Humph.), 343, the Court said: "It is a well settled principle, applicable to all sales of chattels in the possession of the vendor, that the act, or fact of sale, of itself, by operation of law, implies and involves a warranty of the title. This principle operates with as much force when the sale and transfer of the property is evidenced by writing, or by deed, as if the evidence of sale were merely verbal. And this principle does not contravene the general rule of evidence, alluded to by the judge; because the warranty of his title is as strongly implied from the fact of sale, which fact is proved by deed, as if it were proved otherwise. It does not enlarge the writing; it arises by operation of law, from the act or fact of sale itself."

The Court in Gookin v. Graham, 24 Tenn. (5 Humph.), 480, page 484, said: "In a sale of personal property there is always an implied warranty of title, unless it be purchased under such circumstances as clearly show that the vendee intended to risk the title; as if the vendor be not in the possession, but the same be adversely in another."

Where one in possession of goods sells them as owner, the law, in order to discourage dishonesty and fraud, will import into his contract of sale a warranty of title by him. On this point the Court in Word v. Cavin, 38 Tenn. (1 Head.), 506, 509, said:

"And it is clear, that although the terms of a written contract, though it be under seal, do not in themselves, contain or import any express covenant as to the title, yet the law, in order to give a prop-

er force and effect to the contract, and to discourage dishonesty and bad faith, will create and supply as a necessary result and consequence of the contract, certain covenants and obligations, which will bind the parties as effectually as if they had been expressed in the strongest and most explicit terms. Id. [Addison on Con.], 49.

"This doctrine is not at variance with any established principle of the law. It is not adding a new term to the agreement of the parties, in the sense of the law; nor is it any infringement of the principle that parol evidence is inadmissible to enlarge or vary the written agreement of the parties, because such implied covenant is regarded as an inherent term of the contract, not necessary to be expressed, and having the same force as if stated in terms."

Defendant was a dealer in automobiles, new and used, having them in its possession, holding itself out as owner and as having the right to sell them, and selling them to the public in general. It sold the car here in question to plaintiff in the ordinary course of its business, retaining the title thereto in itself to secure the balance of the purchase price. To permit a vendor under such circumstances to say it did not warrant the title and its vendee purchased at his peril, would open the door to imposition and fraud upon the public. In Gross v. Kierski, 41 Cal., 111, it is said:

"When the goods are at the time in the possession of the vendor, who deals with them as owner, and under such circumstances sells and delivers them to the purchaser, the law will imply against the vendor that he warrants the title to the property sold. This implication is indulged for the protection of the purchaser against what would otherwise be the fraud of the vendor, practiced upon him when he is himself not chargeable with negligence; for it is unreasonable to exact of the purchaser of goods that he is in every case to institute an inquiry into the title of his merchant, upon pain of losing both the goods and their price. The purpose of the law in implying the warranty is the protection of the purchaser; it determines that the vendor did warrant the title to the goods, because it considers that, under the circumstances, he ought to have done so."

To the same effect is Word v. Cavin, supra.

■ Such was the common law of this State upon the subject of warranties of title by the vendor in sales of personalty when the Uniform Sales Act (Code, secs. 7194-7270) was enacted. This act we think, was but declaratory of the common law on this subject. It provides (sec. 7206):

"In a contract to sell or a sale, unless a contrary intention appears, there is

"(1) An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods, and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass.

"(2) An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale.

"(3) An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made.

"(4) This section shall not, however, be held to render liable a sheriff, auctioneer, mortgagee, or other person professing to sell by virtue of authority in fact or law goods in which a third person has a legal or equitable interest. (Ib., sec. 13.)"

These warranties by the vendor protect the vendee against liens or charges upon the goods. Johnson City v. Press, Inc., 171 Tenn., 80, 87, 100 S. W. (2d), 657.

Defendant, however, contends that it relieved itself of all warranties of every sort by the provisions of the contract, which were: "No warranties, expressed or implied, representations, promises or statements have been made by the seller unless endorsed hereon in writing." The only endorsements were those by which defendant transferred the contract to the General Motors Acceptance Corporation and certified, among other things, that "said contract arose from the sale of the within described property, warranting that the title to said property was at the time and now is vested in the undersigned (defendant) free of all liens and encumbrances. . . ."

It is true stipulations like those here invoked have been held to exclude parol warranties or representations contradictory of the writing. Somerville v. Gullett Gin Co., 137 Tenn., 509, 194 S. W., 576; Deaver v. Mahan Motor Co., 163 Tenn., 429, 43 S. W. (2d), 199; Searcy v. Brandon, 167 Tenn., 218, 68 S. W. (2d), 112; White Co. v. Bacherig, 9 Tenn. App., 501; Southern Tractor Co. v. Brown Const. Co., 20 Tenn. App., 332, 98 S. W. (2d), 1082. But none of these cases involved a warranty of title. The warranties or representations excluded were as to condition, quality, or fitness of the thing sold, and not as to title. None of these cases is authority for defendant's proposition that these stipulations in the conditional sale contract exclude a warranty of title by the vendor. So to construe them would bring them into conflict with the other provisions of the contract, both those imported into it by the law and those written into it by the parties themselves. One of the terms imported by the law, under the circumstances here shown, was that defendant warranted the title. Trigg v. Faris, supra; Word v. Cavin, supra. And one of the terms put in by the parties was that the title should remain in the conditional vendor until the vendee paid the balance of the price, but should pass to him as soon as he did this. This was in itself a warranty of title by the vendor. MacDonald et al. v. Mack Motor Truck Co., 127 Me., 133, 142 A., 68; 55 C. J., 782. For these reasons we hold that defendant warranted the title to the car.

158

■ This warranty was breached by the encumbrance on the tires, which were a part, though an essential part, of the thing sold. Code, sec. 7206 (3); Johnson City v. Press, Inc., supra. A breach of warranty of title by the seller entitles the buyer to choose any one of the several remedies, one of which is rescission. Code, sec. 7262; True v. J. B. Deeds & Sons, 151 Tenn., 630, 271 S. W., 41. Defendant's breach of warranty was complete, though the failure of its title was only partial; and for this breach plaintiff was entitled to rescind. Williston on Sales says (vol. 2, p. 1525): ''The decisions which allow rescission do not generally make the right dependent on the importance of the warranty or the character of the breach of it, nor does the Sales Act.'' See also Hart-Parr Co. v. Duncan, 75 Okla., 59, 181 P., 288, 4 A. L. R., 1434.

■ Counsel refers to another matter disclosed in the evidence. While defendant declined to pay off the encumbrance on the tires which it sold plaintiff, it did offer him some more tires, which he declined to take. There is some controversy as to whether these were new or used tires. But we regard this as immaterial. There was nothing in the sale contract which allowed defendant to substitute other tires or required plaintiff to take them. This offer was merely a new negotiation—an offer by defendant of an accord and satisfaction of its breach of warranty of title to the tires, which plaintiff was not bound to accept; and, since he did decline it, it did not affect his right to rescind the sale on account of defendant's breach of warranty.

■ ■ Defendant insists that plaintiff did not return the car or tender it so as to entitle him to rescind. When the tires were taken, plaintiff requested defendant to take back the car and pay his money back, which it declined to do. This is admitted by defendant's witness Aita. This, we think, was sufficient. An actual tender is excused where the seller refuses the buyer's offer to return the goods and the tender would be but a useless formality. Code, sec. 7262 (3), (4), (5); 2 Williston on Sales (2 Ed.), pp. 1529, 1530; 55 C. J., 283, 284; Cf. Hawkins v. Byrn, 150 Tenn., 1, 12-14, 261 S. W., 980; Lamborn & Co. v. Green & Green, 150 Tenn., 38, 50, 262 S. W., 467.

■ It is insisted that plaintiff cannot rescind because his suit is for two inconsistent remedies, damages and rescission. We think the warrant sufficiently stated a cause for rescission. While a warrant of a justice of the peace serves the double purpose of process and pleading (History of a Lawsuit (5 Ed.), p. 84), it need not state a cause of action with the particularity required of a declaration; but it is sufficient if it gives defendant notice of the claim sued on which will enable him to prepare for trial. Nichols v. Turnpike Co., 128 Tenn., 541, 542, 543, 162 S. W., 588. The warrant in the present case called on defendant ''to answer in a civil action brought by S. B. Rundle for breach of contract and breach of warranty in the sale to plaintiff on one Chrysler Sedan automobile, motor No. C17531, and

the return of the initial payment of the purchase price therefor.'' Thus the cause averred was a breach of contract or warranty in the sale of the car, the remedy for which was either damages or recission, depending upon plaintiff's election. If he had sought both these remedies, this would have made the pleading open to the objection of repugnancy (Deaver v. J. C. Mahan Motor Co., 163 Tenn., 429, 431, 43 S. W. (2d), 199); but he did not do this. He did not sue for damages. He sued for ''the return of the initial payment of the purchase price'' of the car, which is the appropriate remedy upon rescission.

For these reasons we think plaintiff was entitled to rescind the sale and recover the $50 he had paid on the car. This being so, he was not liable on the contract of sale or for the deficit which defendant sought to recover of him in its cross-action. (Code, sec. 7262(4) ).

The judgment of the circuit court is reversed and judgment will be entered in this court for plaintiff against defendant for $50 and all the costs.

Faw, P. J., and Crownover, J., concur.