MITCHELL v. PORTER.—173 S. W. (2d) 443.

Western Section. July 18, 1942.

Petition for Certiorari denied by Supreme Court, January 31, 1943.

500

502

J. E. Madden and William J. Ling, both of Memphis, for complainant.

Abraham E. Horn and Thomas F. East, both of Memphis, for defendant.

ANDERSON, J. The complainant, George Mitchell, doing business as Memphis Welding Company, filed this bill against Dr. A. R. Porter, seeking a new trial of a case at law wherein judgment had been rendered against him in favor of the defendant in the bill. Generally stated, the ground was that the judgment had been rendered at a time and under such circumstances as that through no fault of his own the complainant had been deprived of an opportunity to file a motion for a new trial and preserve the evidence heard in the case at law by bill of exceptions and hence he had been precluded from seeking relief either by a motion for a new trial or a review by this Court of the judgment rendered against him. The prayer was that the judgment at law "be set aside and declared null and void and that complainant be granted a new trial upon the law and facts in Your Honors Court," and that "the defendant, his agents, attorneys and privies be enjoined from taking any steps under said judgment," especially from in any way seeking to enforce said judgment by execution.

The cause was first heard upon the application for an injunction made after notice to the defendant. This hearing resulted in an order granting the injunction as prayed for and directing that the same should remain in full force and effect until modified or dissolved by the Chancellor.

Thereupon the defendant filed a demurrer coupled with an answer. The grounds of the demurrer were, (1) that "there was no equity in the face of the bill," and (2) "because the complainant has a plain, adequate and com-

plete remedy at law by appeal to the Court of Appeals, by certiorari; or by writ of error coram nobis or by writ of error.''

The answer denied generally that the case made by the bill presented a situation wherein the Chancellor was authorized to grant the relief sought.

On January 21, 1941, an interlocutory order was entered reciting that the cause was heard on the demurrer to the bill and after due consideration the Chancellor "is of the opinion that the demurrer is not well taken and that the same should be overruled and that the complainant is entitled to the relief sought in the prayer of his original bill.'' After this premise it was decreed that the demurrer was overruled and that the judgment entered in the Circuit Court "is declared to be null and void in its entirety and that further proceedings in that cause by the defendant or any one else be perpetually enjoined.'' Following this, the order recited that "this cause now stands ready for trial in this Court upon original pleadings and record or copies of same which are filed in the Circuit Court of Shelby County, Tennessee, in case No. 91707 and shall be tried in this Court according to the forms of law.''

The defendant excepted to this order and was given leave by the Court "to further rely upon his demurrer.''

The case was then proceeded with as if a new trial of the action at law had been granted and the issues as made up in the law Court were then tried by the Chancellor upon oral evidence, the ultimate question being whether the complainant was liable upon an account for medical services rendered by the doctor to one of the complainant's employees. This trial resulted in a final decree reciting that a new trial of the action at law had

theretofore been granted and that the cause had come on finally to be heard "upon oral proof without the intervention of a jury and upon the original proceedings as filed in the law Court, and upon the oral pleas of the complainant (defendant at law) and the Court after hearing the evidence and argument of counsel finds that the defendant, Dr. Arthur R. Porter, Jr. (plaintiff at law) has wholly failed to establish his case and that judgment for the complainant, George Mitchell et al. (defendants at law) should be entered in this Court." It was accordingly decreed "that the injunction heretofore issued against the judgment in the Circuit Court of Shelby County in the case of Porter v. Mitchell, T. D. 91707, is by the Court made final and perpetual" and that the defendant and his sureties should pay the cost of the cause.

Following this decree the defendant seasonably made his motion for a new trial and also what is denominated a "motion for a judgment non obstante veredicto," both of which were overruled, whereupon he prayed an appeal to this Court.

Apparently the Chancellor was of the opinion that his order granting the new trial was justified by the averments of the bill and the admissions of the answer, for no evidence seems to have been heard prior to the decision incorporated therein. This, however, is immaterial in the view we have of the case.

We deem it unnecessary to refer to the manner in which what we conceive to be the determinative question is presented. Unless the averments of the bill make a case for the intervention of a court of equity, the judgment at law described therein is conclusive and the chancery court had no jurisdiction of the subject matter, a question that can be raised at any time. Compare: King

v. Vaughan, 16 Tenn. (8 Yerg.), 59, 60, 29 Am. Dec. 104; Petition of Southern, etc., Mfg. Co., 141 Tenn. 325, 210 S. W. 639.

In its last analysis, therefore, the contention in this court is that the Chancellor erred in holding "that the defendant in error (complainant)," to use the language of the assignments of error, "was prevented from having his complete and adequate remedy at law by surprise, accident or mistake."

A consideration of this question requires an examination of the history of the litigation at set forth in the bill. It seems the defendant Porter sued the complainant before a Justice of the Peace to recover the balance alleged to be due on account for professional services alleged to have been rendered on Causey at the special instance and request of the complainant during the period that Causey was in the employ of the complainant. Upon an appeal by the defendant from an adverse judgment, the case was heard before the Circuit Judge without a jury on April 29, 1938, the judge taking the case under advisement. It remained under advisement from April 29, 1938, until February 29, 1940, upon which date it was decided in favor of the defendant herein. Upon a motion for a new trial the complainant urged the failure of the judge to decide the case within the term within which it was submitted, and a new trial was granted on that ground. The case again came on for trial on July 8, 1940, a day of the May 1940 Term. Having been heard on oral testimony, it was again taken under advisement until September 14, 1940, when the Court rendered a judgment for the defendant herein, awarding him a recovery. After reciting the foregoing facts, the bill charges that September 14, 1940, "was Saturday and not a business day of the Court

and the last day of the term'' and that the judge of his own motion incorporated in the judgment rendered against the complainant an order ''extending the time or term for a period of 30 days for all purposes,'' that neither he (complainant) nor his counsel were present at the time said order was entered ''nor had any notice whatsoever that said order was about to be entered and could not have known of such order, in the exercise of reasonable diligence, and that counsel for complainant herein (defendant at law) acquired knowledge of said judgment on Monday, September 16th, 1940, through the medium of a notice in the Daily News which is a publication of Court business circulated among the lawyers at the local bar.''

It is further averred that the complainant filed his motion for a new trial, which was overruled by the trial Court on September 27, 1940, ''and he was granted an additional 30 days in which to perfect his appeal and tender his bill of exceptions, and on October 9, 1940, he tendered a narrative of the testimony to counsel for the defendant (plaintiff at law) with the request that he suggest any omissions, imperfections or misstatements, and that the latter made none; that complainant tendered the bill to the Court on or about October 17, 1940, and was advised on October 19, 1940, that ''counsel for the plaintiff at law had objected to the settlement of the bill of exceptions on the ground that it was not tendered within the 30 days allotted in the order of September 14, 1940, it being the contention of the plaintiff at law that the Court, having entered the order of September 14th, 1940, upon the last day of the term was without power to further extend the term for the purpose of filing the bill of exceptions and accordingly an order was entered

on October 28, 1940, denying the complainant the right to file his bill of exceptions or extend him further time to reconcile testimony.'' It is then charged that that part of the order of September 14, 1940, attempting to extend the term for the purpose of filing motion for a new trial and praying an appeal ''is coram non judice and that the trial Judge was wholly without the power to extend the term for the purpose of praying an appeal or making a motion for a new trial.''

After charging that ''the hard and fast rule of common law being that the party seeking to obtain a new trial must file his motion at the term of the Court in which the case was decided and not only file his motion but the minutes of the Court must show that the motion was filed and submitted for consideration during the term in which the case was tried,'' the bill continues: ''The complainant shows that it was impossible for him to move the Court for a new trial during the term for the reason that the case was decided upon Saturday, September 14th, 1940, which was not a business day of the Court and the last day of the term of Court and that he had no knowledge of the action of the Court and he was not notified by the Court or anyone else and that he would not reasonably anticipate that the Court was going to decide the case and that such action on the part of the trial Court at law has taken him by surprise and that it was the result of accident and mistake on the part of the trial Court for which no procedure in the trial Court can be had to rectify the accident or mistake on the part of the trial Court, and that he has no adequate remedy at law.''

In the asnwer it is admitted that the history of the litigation as set out in the bill is substantially correct, but

the validity of the legal conclusions drawn by the complainant is denied. The averment that the judgment rendered on the last day of the May term and that this day was Saturday, and "not a business day of the Court" is expressly admitted. However, the defendant neither admits nor denies the averment to the effect that neither the complainant nor his counsel were present at the time the order was entered and that neither had any knowledge thereof until September 16, 1940, nor could have by the exercise of reasonable diligence acquired any prior to that time.

It will be perceived that the case for the interposition of the Chancery Court proceeds upon the theory that through no fault of his own the complainant was deprived of his right to have the trial at law reviewed upon a motion for a new trial under such circumstances as that his right to have his case reviewed on the merits on appeal in event of an adverse decision would be preserved. There is no doubt about the jurisdiction of a court of equity to grant the relief in a proper case. State ex rel. Terry v. Yarnell, 156 Tenn. 327, 5 S. W. (2d) 471; Dennis v. State, 137 Tenn. 543, 195 S. W. 162. But does the bill present a proper case?

In its last analysis the basis for invoking the aid of a court of equity, so far as it need be considered, is primarily the asserted proposition that the trial judge did not have the authority to extend the trial term for the purpose of allowing a motion for a new trial to be filed, and that the order made at the time the judgment was rendered by which it was sought to do this was coram non judice and hence noneffective.

Therefore we must decide when, if ever, can a trial term be extended for the purpose of allowing a motion

for a new trial to be filed and, if it can be, what procedure is necessary to accomplish it?

A determination of these questions depends upon the construction to be given Code Section 10312, concerning the proper application of which there is apparently some difference among counsel, which we are requested to settle and clarify.

That section is in the following language:

"When any case, on trial by court or jury, is undetermined at the time the term at which it is pending expires, on account of time, and on account of the arrival of the succeeding term, the term shall be extended and continued into such succeeding term for all the purposes of trying, disposing of, and returning verdict and rendering judgment in such case, the same as if such new term had not arrived. And the jury trying such case shall not be discharged because of the expiration of the term."

This statutory provision originating with the Acts of 1899 and carried into the Code without modification has been under consideration in numerous cases. These are Jackson, etc., Co. v. Simmons, 107 Tenn. 392, 64 S. W. 705; Ray v. State, 108 Tenn. 282, 67 S. W. 553; Rhinehart v. State, 122 Tenn. 698, 127 S. W. 445; Louisville & N. R. Co. v. Ray, 124 Tenn. 16, 134 S. W. 858, Ann. Cas. 1912D, 910; Dunn v. State, 127 Tenn. 267, 154 S. W. 969; National Refining Co. v. Littlefield, 142 Tenn. 689, 223 S. W. 140; Citizens' Nat. Life Ins. Co. v. Witherspoon, 127 Tenn. 363, 155 S. W. 139; Puryear v. State, 174 Tenn. 291, 125 S. W. (2d) 138; and Buchannon v. State, 177 Tenn. 140, 146 S. W. 952.

It is impossible to understand the logic of this provision unless there be borne in mind the effect of the ending of the term, either by operation of law or adjourn-

ment to court in course, upon the authority of the judge, with respect to a case he had tried or was trying. Originally the authority of the judge expired with the adjournment of the trial term. Jones v. Burch, 3 Lea 747; Kennedy v. Kennedy, 81 Tenn. (13 Lea), 24. From time to time his control over such a case for certain specific purposes has been extended by different statutes. See Scopes v. State, 152 Tenn. 424, 278 S. W. 57. The only one we are concerned with at the moment is that now contained in the quoted code section.

■ It is still the rule that a motion for a new trial must be filed during the trial term or a duly authorized extension thereof and *before the judgment becomes final by virtue of the operation of Code sections 9047 and 9048.* Dunn v. State, 127 Tenn. 267, 154 S. W. 969.

As to when judgment becomes final under that section, see Shipley v. Barnett, 161 Tenn. 437, 32 S. W. (2d) 1022; Durham Coal & Iron Co. v. Bischel, 4 Tenn. App. 233; Memphis & C. R. Co. v. Johnson, 16 Lea 387; Beiler v. State, 158 Tenn. 404, 14 S. W. (2d) 51.

■■ When so filed the fact noted on the minutes or the rule or motion docket, the judgment is suspended until the motion is disposed of. Life & Casualty Ins. Co. v. Baber, 166 Tenn. 10, 57 S. W. (2d) 791; Cochran v. National Life & Acc. Ins. Co., 167 Tenn. 95, 66 S. W. (2d) 996; Payne v. Eureka-Security Fire & Marine Ins. Co., 173 Tenn. 659, 122 S. W. (2d) 431. If overruled, the judgment is, *for the purpose of an appeal or appeal in error,* regarded as having been entered as of the date of that action. Louisville & N. R. Co. v. Ray, 124 Tenn. 16, 134 S. W. 858, Ann. Cas. 1912D, 910.

■ Although there seems to be some slight confusion in the cases about the matter (see the reference in Louis-

ville & N. R. Co. v. Evins, 13 Tenn. App. 57, 61), the sounder view from the standpoint of procedural policy, we think, is that the appeal is not from the order overruling the motion for a new trial, but from the judgment itself regarded *for the purpose of the appeal* as having been entered as of the date the motion is overruled. Louisville & N. R. Co. v. Ray, supra; Tennessee Electric Power Co. v. Hanson, 18 Tenn. App. 542, 79 S. W. (2d) 818; Briggs v. Clawson Bros., 3 Tenn. App. 146; Bostick v. Thomas, 137 Tenn. 99, 191 S. W. 968; Wade v. Power & Light Co., 11 Tenn. App. 577.

We say this is the sounder view because it would seem that an appeal from the order overruling the motion for a new trial, if effective at all, would bring up for consideration only the question of whether that action was correct, whereas an appeal from the final judgment would present for review not only that question but also questions arising on the technical record treating the remedy as operating both as a simple appeal and an appeal in error.

The matter is fully discussed in Louisville & N. R. Co. v. Ray, supra, and we are unable to conclude that by the suggestion made in Hamburger v. Illinois Cent. R. Co., 138 Tenn. 123, 131, 196 S. W. 144, the court meant to overrule that well-considered decision on that point.

So where the motion for a new trial is seasonably filed, the right to appeal from the final judgment is not jeopardized by the fact that it is carried over and disposed of at a subsequent term. McAlester v. Monteverde, 22 Tenn. App. 14, 115 S. W. (2d) 257, and cases cited; see Carpenter v. Wright, 158 Tenn. 289, 13 S. W. (2d) 51.

However, it is proper to point out in this connection that formerly the authority of the judge to consider the

evidence heard on the trial expired with the end of the term, unless it had been preserved by a bill of exceptions seasonably signed and filed, even though it was necessary to do this before the motion for a new trial was acted on. Dunn v. State, supra; Kyle v. Goulette, 9 Tenn. App. 203; Carpenter v. Wright, supra.

In other words, unless it had been seasonably made a part of the record, the evidence was not available for consideration in disposing of the motion for a new trial at a term subsequent to the trial term, and it was, of course, also formerly true that the judge had no authority to allow such a bill of exceptions at a term subsequent to the trial term and no authority to allow time within which to file a bill, his statutory power in that respect being then confined to the trial term. Dunn v. State, supra; Scopes v. State, supra; Austin v. State, 157 Tenn. 202, 7 S. W. (2d) 806; Buchannon v. State, 177 Tenn. 140, 146 S. W. (2d) 952.

This we say was formerly the rule. It has been modified by Code section 8822, as amended by the Acts of 1939, Chapter 145, and Acts of 1941, Chapter 152, authorizing the judge to allow time within which to file a bill of exceptions where a motion for a new trial *filed at the trial term* has been disposed of at a subsequent term. See McAlester v. Monteverde, supra. By necessary implication, these statutory provisions authorize the consideration of the evidence at the subsequent term even though it is still in what is referred to in Dunn v. State, as a "fluid state," that is, not incorporated in a seasonably filed bill of exceptions; for there would be no point in authorizing the judge to allow time to have a bill prepared preserving something that he was not authorized to consider.

■ Contrary to the general rule (Dunn v. State, supra), these statutory provisions make the right to a bill of exceptions dependent upon a motion for a new trial. Carpenter v. Wright, supra.

■ From what has been said, it is obvious that from a procedural standpoint the seasonable filing of a motion for a new trial was vital to the protection of the complainant's rights with respect to his several remedies for the correction of errors insofar as these involved a consideration of the facts. See Board v. Nashville, C. & St. L. Railway, 148 Tenn. 676, 257 S. W. 91.

■ ■ Assuming therefore that due to the fact that the judgment was rendered on the last day of the term, there was not a reasonably sufficient time left within which to prepare and file a motion for a new trial, we come to the question of whether the judge had the authority to extend the term so as to allow that step to be taken. As above indicated, if he had such authority, it was only by virtue of Code section 10312 above quoted.

Compare: Southern Continental Tel. Co. v. Alley, 167 Tenn. 561, 72 S. W. (2d) 555, and Beiler v. State, 158 Tenn. 404, 14 S. W. (2d) 51; Buchannon v. State, 177 Tenn. 140, 146 S. W. (2d) 942.

The question must be answered in the affirmative. From the construction given the original Act of 1899 now embodied in the Code, we think it must be held that one purpose was to take care of a situation where due to the approach of the time when the term would end *by operation of law*, there was no opportunity to file a motion for new trial and dispose of it upon a consideration of the evidence that was then still in a fluid state. In short, the act was intended to provide a way whereby in a proper case the destructive effect of the end of the term

*by operation of law* upon the power of the judge over that phase of a case on trial could be avoided.

 A detailed discussion of the cases construing the provision would serve no useful purpose. They demonstrate that where the factual basis contemplated by the statute exists, the trial judge has the power to extend the term not only for the purpose of receiving a verdict or rendering judgment, but that the language "for all purposes of trying, disposing of, and returning a verdict and rendering judgment," comprehends the authority to make all orders that may be necessary to enable the litigants to lay a proper foundation for a review. This, of course, includes the authority to extend the term for the purpose of allowing while the extension is in force a motion for a new trial to be filed and disposed of; granting an appeal or making such further orders as are, or may be, necessary to complete the record. During the extension of the term where authorized and made in the proper manner, the judge has all of the authority he had during the trial term proper and all things done during that period are to be regarded as having been done at the regular trial term. In short, the period during which the extension is running is regarded as a part of the trial term itself. This is important to remember. It is also important to bear in mind the clear distinction between the statutory authority to extend a trial term and the power of the judge during the extended period upon the one hand and his more restrictive statutory authority to allow time for filing a bill of exceptions or praying an appeal and the like. See Buchannon v. State, 177 Tenn. 140, 146 S. W. (2d) 952; and Beiler v. State, 158 Tenn. 404, 14 S. W. (2d) 51.

The failure to recognize this distinction seems to have given rise to confusion at the bar and at some of the trial courts with respect to the proper uses of the authority conferred by Code Section 10312. That Section does not contemplate a situation where judgment has been entered and a motion for a new trial has been *filed and disposed of*, all at the regular trial term. It has no application where the authority of the judge to do what is necessary to complete the trial and preserve the rights of the litigants is not threatened and about to terminate by the arrival of the time for the beginning of another term.

The foregoing views, we think, are borne out by the case of Dunn v. State, than which there is no more informative decision on questions or practice involving motions for new trials and bills of exceptions. It is there expressly noted that a motion for a new trial must be made at the trial term but the Court was careful to point out that "When we say trial term, we must be understood as including any period during which the term is running, and before final adjournment thereof, even though the court run for a day, or several days, beyond the day on which it is arranged to end by the special statute or statutes prescribing the beginning and ending of terms of court; such running forward into the time of a succeeding term being also by authority of law to provide for the contingency of an unfinished trial. Code, statutes, and cases, supra" [127 Tenn. 267, 154 S. W. 971]. Manifestly the statute referred to is that now found in Code section 10312 which we are considering.

All that is elsewhere said in the Dunn case must be considered in the light of the significance of the language just quoted. When so considered, we think there can be

no doubt but that the statute authorizes the extension of the term in a proper case in order that a motion for new trial may be filed.

■ Once the motion is seasonably filed, that is, either at the regular term or during the running of a properly authorized extension and the fact properly noted of record (Life & Cas. Ins. Co. v. Baber, 166 Tenn. 10, 57 S. W. (2d) 791; Payne v. Eureka-Security Fire & Marine Ins. Co., 173 Tenn. 659, 122 S. W. (2d) 431), the judgment is suspended and, as above pointed out, under statutes now in force, time for an appeal and the preparation of a bill of exceptions can be allowed after the motion is disposed of even though this be done at a subsequent term. Code Section 8822; Chattanooga Dayton Bus Line v. Burney, 160 Tenn. 294, 23 S. W. (2d) 669; Austin v. State, 157 Tenn. 202, 7 S. W. (2d) 806. Hence the vital importance of the seasonable filing of a motion for a new trial. See McAlester v. Monteverde, supra; and Carpenter v. Wright, supra.

■ But we emphasize that the authority to extend the trial term exists only when the factual basis therefor contemplated by the statute is present and this should affirmatively appear; that is to say, it should affirmatively appear as a condition precedent to the exercise of the authority that the case in question was on trial and undetermined when the trial term expired, not necessarily by the adjournment to court in course, but on account of the arrival of the time for opening the succeeding term. A situation resulting from the adjournment of the trial term where the time for holding a succeeding term has not arrived is not within the purview of the statutory provision.

 Nor can there be an extension of the term for the purpose contemplated by the statute, and an adjournment to court in course at the same time. This is made clear by the authorities above cited. The two orders are wholly inconsistent. If there be an order extending the term made for a proper purpose and upon a sufficient factual basis, that automatically extends the authority of the judge to the extent above indicated, but this authority is as effectually cut off by an order adjourning the term to court in course as it would have been by the arrival of the end of the term if there had been no extension.

 From what has been said it follows that the complainant was not deprived of any rights simply by reason of the fact that the judgment was rendered on the last day of the term, for, as we have held, the judge had ample authority to extend the term by an appropriate order for the purpose of allowing the motion for a new trial to be filed, and if such an order had been made and the motion filed and noted of record within the extension of the term and before the expiration of thirty days from entry of the judgment, it would have had the same effect,—that is, suspended the judgment and prevented it from becoming final, as would have followed if the motion had been filed during the original term.

 But in this case there remains the question of whether the order by which it was sought to extend the term was sufficient in form and substance to accomplish that purpose. As above stated, it simply recited that, ''It is hereby ordered that the time and term herein be and the same is hereby extended for a period of 30 days for all purposes.'' There is no recitation of the factual situation supposed to have made an extension of the term necessary. While it would have been not improper and

very good practice to have recited the facts of the procedural situation contemplated by the Code section as a prerequisite to the authority in question, it is perhaps true that the Court would take judicial notice that the order was entered on the last day of the term, and that the time for holding the succeeding term had arrived. But apart from this we do not think that the order as made was sufficient to accomplish the purpose intended. It is not enough to simply recite, as does the order here, that the term is extended for a specified time without showing any adjournment. The method by which the extension is to be accomplished is very clearly indicated in Dunn v. State in the following language:

"Likewise the judge, *by adjoining from day to day as usual, or to a day certain before final adjournment, may extend the term, when a case is on trial and uncompleted when the regular time for adjournment of the court by law arrives, and in such a case may, as incident thereto, act on a motion for new trial, and sign a bill of exceptions before he closes the term* (Street Railroad & Telegraph Companies v. Simmons, 107 Tenn. 392, 64 S. W. 705; Ray v. State, 108 Tenn. [282], 283, 67 S. W. 553; Acts of 1899, ch. 40; Shan. Code, secs. 6016, 6057; Acts of 1835-36, ch. 5, sec. 4); but he cannot sign such bill of exceptions after he has formally adjourned the term of the court (Rhinehart v. State, 122 Tenn. 698, 127 S. W. 445), unless within the term, by order on the minutes, time be granted, not exceeding 30 days from the date of adjournment, for the making and filing of a bill of exceptions."

The emphasis is ours and is resorted to because of the pertinency of the emphasized language to the question in hand.

This procedure is emphasized in the subsequent case of National Refining Co. v. Littlefield, 142 Tenn. 689, 223 S. W. 140, 141.

The question there was with reference to whether a bill of exceptions had been filed in time. A motion for a new trial filed at the trial term was taken under advisement and disposed of at the succeeding term. The bill of exceptions was not filed until the succeeding term and there had been no order entered on the minutes extending the time within which to file the bill. It is nevertheless contended that by virtue of the statute now contained in Code section 10312 as construed by the Supreme Court, "that where the court is not formally adjourned, but that matters are carried over from the trial term into the next or succeeding term, it necessarily follows that all matters necessary to complete the record are also carried over."

After referring to the construction given that enactment in Dunn v. State, supra, as above quoted, with respect to the kind of adjournment necessary to extend the trial term, the Court said:

"In the instant case there was no adjourning from day to day, or to a day certain before final adjournment, but there was a formal adjournment of the court for the term, and, after formal adjournment of the term, the trial judge cannot sign a bill of exceptions."

While the record in the instant case does not disclose that there was an order finally adjourning the trial term, yet there was no order adjourning from day to day or to a day certain, which, we think, was necessary to an effective extension of the term: In other words, as we have said, the allowance of time within which to file a bill of exceptions or to perfect an appeal under the stat-

utory provisions is not the same thing as extending the trial term under the authority of Code section 10312. It certainly could not have been contemplated that the trial term should have remained unadjourned for a period of 30 days with the result that the opening of the new term would have necessarily been delayed that long.

So we think the matter must be regarded as if no order had been made and the right of the defendant in that case, complainant here, to take the steps necessary to apply for a new trial and thus lay the foundation for a review of questions requiring a consideration of the evidence was cut off by the arrival of the succeeding term. The question remaining is whether, upon the facts shown in the present record, he was entitled to the new trial granted him by the Chancellor.

 The difficulty with which complainant is confronted is that he made no application for an extension of the term and took no steps to see that an order that would have accomplished that purpose was entered, as we think it must be held he should have done. He is chargeable with knowledge of what was required and, the order made being insufficient, it was his duty to see that a proper one was entered or at least make an application therefor which we must presume would have been readily allowed.

Complainant seeks to escape the effect of his omission upon the theory that neither he nor his attorney had any knowledge, actual or constructive, of the fact that the judgment had been rendered and the abortive order entered until after it was too late to do anything about it. We think the excuse offered is insufficient. The complainant knew that the judge had the case under advisement, he knew that it had not been decided, and he knew

that the end of the term was approaching. He also knew that unless the case was decided before the term ended, the judge would have no authority to decide it at the succeeding term, for the evidence not having been preserved by a bill of exceptions, he would have no right to consider it after the term had expired. Kyle v. Goulette, supra. He had been made pointedly aware of this because one new trial had been granted because of precisely similar circumstances. He also must be held to have known that if the case should be decided so late in the term he would have to get in a motion for a new trial forthwith in order to suspend the judgment and prevent it from becoming final, thus preserving his right to appeal and laying the foundation for a review, or that he would have to get a proper order extending the term for that purpose. We say he was chargeable with knowledge of all these facts and this being so we think reasonable diligence required that he appear in court before the term expired and make an appropriate application with respect to the matter.

The general rule dictated by the requirements of sound policy is that a party to a case properly before the court is chargeable with notice of all subsequent steps taken in the cause down to and including the judgment, although he does not in fact appear and had no actual notice thereof. So, the attorneys in the case, where proper process has been issued, who are in court, are chargeable with notice of all orders affecting pending causes. 46 C. J. 548, sec. 41; Brite v. Grubbs, 144 Tenn. 647, 234 S. W. 759.

It is also the duty of counsel engaged in the trial of a case to call the attention of the judge to errors committed during the course of the proceedings in order that

they may be corrected while there is an opportunity; otherwise it not infrequently happens that they cannot be heard to complain. King v. Vaughan, 16 Tenn. (8 Yerg.), 59, 60, 29 Am. Dec. 104; Carney v. Cook, 158 Tenn. 333, 13 S. W. (2d) 322; Hamilton v. Carter, 14 Tenn. App. 337; Provident L. & Acc. Co. v. Broome, 17 Tenn. App. 284, 66 S. W. (2d) 1041; Curtis v. Kyte, 21 Tenn. App. 115, 106 S. W. (2d) 234. See Kenner v. City Nat. Bank, 164 Tenn. 119, 131 et seq., 46 S. W. (2d) 46.

 Being, as we say, chargeable with knowledge of the order, its insufficiency and the legal consequences, complainant could not remain silent and inactive. Upon the contrary, he should have made timely objection and requested an order that would have been effective to extend the term. His failure to do this rather than the alleged "inflexibility of the rules of common law procedure" is what brought about the loss of which he complains.

It follows from what has been said that the averments of the bill do not make a case for equitable interposition. The judgment at law was a bar to a decree on the merits in the Chancery Court. That court had no jurisdiction of the subject matter. See King v. Vaughan, supra.

 What then is the proper disposition to be made in this court? The complainant prayed in his bill that the case be tried on oral evidence, and it was so tired pursuant to that prayer, presumably at the direction of the chancellor in accordance with Code section 10564 as amended by Pub. Acts of 1935, chapter 106. This being true, the case is triable de novo in this court, notwithstanding that an unnecessary motion for a new trial was made and the appeal in error will be treated as a simple appeal, bringing up the whole case.

This is the rule where a case has been tried in Chancery on oral evidence under a written agreement made pursuant to the original Acts of 1917, Chapter 119. Broch v. Broch, 164 Tenn. 219, 47 S. W. (2d) 84, and cases cited; Jenkins v. Harris, 19 Tenn. App. 113, 83 S. W. (2d) 562, and cases cited. By a parity of reasoning we think the amendatory act must be regarded as having the effect of preserving the equitable nature of a case tried pursuant to its provisions, thus making a case tried according to its provision triable de novo on appeal.

[27] This being so, we have jurisdiction of the whole case and apart from the consequences of the rule that a lack of jurisdiction of the subject matter may be taken advantage of at any time and in any court, we are authorized to do what we are constrained to conclude the Chancellor should have done, namely, dismiss the bill. It will be so ordered. The complainant will pay the cost, including the cost of the appeal.

Ketchum, J., and Lloyd S. Adams, S. J., concur.